Ross *v.* State

No. 40941          November 3, 1958          106 So. 2d 56

*William S. Turner,* Aberdeen, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

■■ ■ Appellant, Andy Ross, was indicated for and convicted of manslaughter, in the Circuit Court of Monroe County. He contends he was entitled to a peremptory instruction. Appellant asked for a directed verdict after the State had closed its case. It was denied, and he then introduced two witnesses. After that he did not ask for a peremptory instruction. It is well settled that a defendant waives his motion for a directed verdict made after the State's case, where he then introduces evidence in his behalf. Kearney v. State, 224 Miss. 1, 79 So. 2d 468 (1955); I. C. R. R. Co. v. Perkins, 223 Miss. 891, 915, 79, So. 2d 459 (1955.) However, the verdict is not against the great weight of the evidence, but in fact is amply supported by it.

The killing occurred on February 27, 1958. Ross and Penny Ryan were neighbors, and had been carrying on a running argument for several years about a fence line between their respective properties. Late that morning Ryan came to defendant's house, and defendant invited him in. Ross did not testify, but, according to a written statement of the occurrence, which he gave officers, Ryan said he had come to talk about the fence line. Defendant stated that Ryan began cursing, because he would not go with Ryan to look at the fence. Defendant picked up a shotgun, and his wife came between them and started pushing Ryan toward the front door. She ushered him almost out of the door, but Ryan was in the doorway holding the screen door, while defendant was standing inside with his shotgun at hip level. Defendant's statement recites that Ryan "tried to grab my gun and I stepped backward two steps and then shot him . . ." A single shot in the left breast was fatal.

■■ ■ Although appellant did not testify, he claims that this written statement and similar oral statements which he made to the officers demonstrate that he was acting in necessary self-defense, to prevent an imminent

and immediate threat to him of great bodily harm or death. He relies upon the rule in the Weathersby case, namely, that where the defendant or his witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State, or by physical facts or facts of common knowledge. Weathersby v. State, 165 Miss. 207, 147 So. 481, (1933). This rule would seem to presuppose that the defendant or his eye-witnesses testify. Neither Ross nor his wife, who also was present, testified. However, assuming defendant's written and oral statements, which were introduced in evidence, constitute the eye-witness testimony required by *Weathersby,* the jury had the right to conclude from appellant's own statements that he was not threatened with any imminent or immediate danger, and that, in attempting to eject Ryan from his home, he used an unreasonable and excessive force.

Moreover, the jury could consider also other testimony which contradicted in material particulars defendant's own statements. Ryan had no weapon in his hands when he was shot. There was a small, unopened pocket knife in his right pocket. Ross told officers when they arrived that the trouble happened over a landline dispute. He stated to the sheriff that Ryan had not threatened him in any way, verbally or physically, and had not pulled his knife or threatened to pull his knife, or showed any signs of violence. Mrs. Walker, who lived next door and east of defendant's home, did not see any of the events prior to the shooting, but she looked out of her kitchen window and saw Ryan falling backward with his hands up in the air. Another witness stated that, on the day before the shooting, he was talking with defendant, who referred to his fence-line argument with Ryan, and who said that he intended to keep his land, "and if somebody tried to take it away from me he's going to get a lot of shot."

■■ ■ This evidence and other circumstances in the record amply justified the jury in concluding that Ross killed Ryan in the heat of passion without malice, without authority of law and not in necessary self-defense. The outlined testimony contradicts defendant's version of the shooting. Resolution of the issues was for the trier of fact.

■■ ■ The trial court at first erroneously overruled appellant's motion for a special venire, but thereafter set aside that order. Miss. Code 1942, Sec. 2505. The court's order then recited that, after it offered to direct the drawing of a special venire, defendant withdrew his motion for one and announced ready for trial. So defendant cannot complain now that he did not obtain a special venire.

■■ ■ The trial court was correct in admitting into evidence the testimony concerning the threat made by defendant as to Ryan on the day before the shooting. It was admissible as tending to show defendant's state of mind, and the identity of the aggressor. Self v. State, 178 Miss. 560, 174 So. 44 (1937.)

■■ ■ The State obtained the following instruction: "The court instructs the jury for the State that the law tolerates no excuse and accounts no justification for the taking of human life upon the plea of self-defense, unless it be reasonably necessary to save the slayer's life, or to save him from great bodily harm at the very instant of the fatal shot. And in this case if you believe from the evidence beyond a reasonable doubt, that the defendant, Andy Ross, fired the fatal shot which killed Penny Ryan at a time when Andy Ross was not in any immediate danger, real or apparent, of losing his life or suffering great bodily harm at the hands of Penny Ryan, then you will find the defendant, Andy Ross, guilty of manslaughter."

Appellant contends that this instruction is reversible error, since it omitted from the "unless" clauses

the additional hypothesis that defendant shot Ryan in necessary defense of his habitation. Appellant relies on Bowen v. State, 164 Miss. 225, 144 So. 230 (1932), where appellant was convicted of murder for the killing of a man who had forceably entered her home for the purpose of raping her. It was held that the evidence would not support a murder charge. The opinion also stated that an instruction, somewhat similar to the above- quoted one, was error, because it ignored the defense of habitation.

The original record in the *Bowen* case reflects that defendant obtained no instruction setting forth her claim of defense of her home, although that was inherent in her case. On the other hand, appellant here was indicted for manslaughter, not murder, and his instruction No. 7 amply and in detail set forth his right to protect his domicile from unlawful entries or from persons whom he desired to eject. It properly stated that, if defendant as a reasonable man was lead to believe "that he was then and there in imminent danger of death or serious bodily harm at the hands" of Ryan, and acting on this belief he shot and killed Ryan, then he was not guilty. Cf. Lee v. State, 100 So. 2d 358 (Miss. 1958); 40 C. J. S., Homicide, Sec. 109; 26 Am. Jur., Homicide, Sec. 166.

2. Alexander, Mississippi Jury Instructions (1953), Sec. 4377, states: "However, an instruction informing the jury that the law tolerates no excuse for the taking of life under a plea of self-defense, unless necessary to save the life of the accused, is error, but not reversibly so where there are other instructions covering the right of the defendant to defend his home and family."

Motley v. State, 174 Miss. 568, 578, 165 So. 296 (1936), supports that principle, and holds that, although it was error to omit reference in the instruction to defense of habitation, "we find no reversible error in the granting of this instruction, because of other instructions." In

other words, the State's instruction on self-defense in a case of this type should include an hypothesis concerning defense of the habitation, but, where the defendant obtains an instruction amply setting forth in his behalf that particular defense, the omission of the hypothesis in the State's instruction is not reversible error. See 89 C. J. S., Trial, Sec. 442.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington,* and *Gillespie, JJ.,* concur.