288 So.2d 866 (1974)
Marion R. HANKINS
v.
STATE of Mississippi.
No. 47617.
Supreme Court of Mississippi.
January 21, 1974.
Rehearing Denied February 18, 1974.
J. Larry Kennedy, Jackson, for appellant.
A.F. Summer, Atty. Gen., by John Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
Marion Hankins was indicted by a grand jury of the First District of Hinds County for the murder of Robert Chaney. He was convicted of manslaughter and sentenced to twelve years in the state penitentiary.
The record reflects that either in the late evening hours of October 31 or the early morning hours of November 1, 1972, Robert Chaney was shot and killed by Marion Hankins. The difficulty preceding this senseless death arose under the following circumstances.
About 11:30 on the evening of October 31, 1972, James Abernathy and Chaney, accompanied by Abernathy's dog Skippy, repaired themselves to "Miss D's," a lounge. *867 Abernathy testified that he was given permission by the proprietress of the lounge to bring the dog into the establishment. In accord with this permission Abernathy and Chaney seated themselves at the bar with the dog occupying a chair between them.
The bartender, appellant here, according to Abernathy, told them that they would have to get the "G.D. dog out" and when informed that permission had been received for the dog's presence, the accused responded that he did not give a "G.D.... You all are going to get the dog out." Thereupon, at the request of the proprietress and in order to avoid trouble, Abernathy and Chaney, accompanied by Skippy, left the lounge.
Immediately thereafter, when they were some fifteen feet from the front door of the lounge, Abernathy stated that they heard shooting and screaming within the building, whereupon Chaney returned and just as he opened the door Hankins, the bartender, came out with a gun in hand with which he shot and killed Chaney.
The accused's version of the affair was that he advised Abernathy and Chaney that it was against the rules to have a dog on the premises and that an argument ensued and that he obtained a gun from under the bar since he did not want both of them to assault him. Whereupon the proprietress placed herself between them and ushered Abernathy and Chaney to the door and requested him to bring the keys so that it might be locked. As he was obtaining the keys, he observed Chaney and Abernathy returning through the door to the lounge. He then obtained the gun which he had put down upon their departure and walked toward them when the following occurred, according to his testimony: "So I got the pistol again in the right hand and got the keys and come around. And by the time I got about, oh, a good half way or more maybe, I wasn't too far from them, from the door. About four feet or something roughly. I seen they was coming on in and me telling them to go back that I was going to shoot and that's when I shot." He stated that the first shot fired by him accidentally struck the proprietress when she was pushed into his line of fire by either Chaney or Abernathy, injuring her, thus explaining the screams heard by Abernathy.
The appellant first contends for reversal that the trial court erred in permitting the revolver and five rounds of spent ammunition to be introduced into evidence through a defense witness. In determining this contention we note that the appellant's justification for shooting Chaney was self-defense. His conviction did not rest upon the identity of a particular pistol being fired at the time. There simply was no issue relating to who shot and killed the deceased or with what weapon. Under these circumstances we are unable to state that the appellant was in any way prejudiced by the admission of the pistol and spent ammunition or that it in any way affected any substantial right belonging to him. Indeed, the appellant's own testimony makes this apparent. Collins v. State, 202 So.2d 644 (Miss. 1967). We conclude this contention to be without merit.
It is next urged that the court erred in not sustaining the motion of the defendant for a directed verdict at the conclusion of the state's testimony and that the verdict of the jury was contrary to the overwhelming weight of the evidence. The appellant is presently precluded from raising any question concerning the motion for a directed verdict since he introduced evidence in his own behalf subsequent to the adverse ruling of the court. In Ross v. State, 234 Miss. 309, 106 So.2d 56 (1958), this Court stated:
... It is well settled that a defendant waives his motion for a directed verdict made after the State's case, where he then introduces evidence in his behalf. Kearney v. State, 1955, 224 Miss. 1, 79 So.2d 468, Illinois Cent. R. Co. v. Perkins, 1955, 223 Miss. 891, 915, 79 So. *868 2d 459... . (234 Miss. at 311, 106 So.2d at 57).
Passing then to the sufficiency of the evidence, that of the state and the defendant, we think it only necessary to state there were several eye witnesses to the affray and that it was within the province of the jury to resolve the conflits in the evidence and to render their verdict in accord with that believed by them. Wilson v. State, 264 So.2d 828 (Miss. 1972). Moreover, it is not the duty of this Court to invade the province of the jury in this regard. In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury. (159 Miss. at 566, 132 So. at 564).
We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the fact-finding office of the jury.
The final argument of the appellant is that the trial court improperly restricted defense counsel in his cross-examination of Abernathy, the state's witness, for the presently-argued purpose of impeachment. This contention concerns itself with the propriety of an objection of the state being sustained when defense counsel asked the witness the circumstances surrounding his leaving the employment of the city fire department. While it is true that great latitude is permissible on cross-examination, this does not mean that the scope of legitimate cross-examination is without limitation. It does not extend to the asking of questions designed merely to embarrass or humiliate a witness and to matters which are irrelevant to the issues in the case. Craft v. State, 271 So.2d 735 (Miss. 1973), and Gilmer v. State, 271 So.2d 738 (Miss. 1973).
The scope of the examination is largely within the sound judicial discretion of the trial court and it has the inherent power to limit the examination to relevant factual issues. Dozier v. State, 257 So.2d 857 (Miss. 1972), and Winter v. Nash, 245 Miss. 246, 147 So.2d 507 (1962). The question propounded was unusually broad; there was nothing to indicate its relevancy to the issue or to impeachment. We therefore cannot state that the court abused its discretion in sustaining the objection to it.
We have considered the evidence in detail and the arguments for reversal propounded by the defendant and conclude the verdict and judgment should be affirmed.
Affirmed.
RODGERS, P.J., and INZER, WALKER and BROOM, JJ., concur.