DAN M. LEE, Justice,
for the Court:
This is an appeal from the Circuit Court of Lowndes County wherein Monique Col-vin, defendant/appellant, was indicted, tried and convicted for the November 30, 1981, murder of Teresa Colvin. Upon conviction, appellant was sentenced to serve a life term in the custody of the Mississippi Department of Corrections. She now prosecutes her appeal to this Court and assigns the following errors for reversal of her conviction.
I. The trial court erred in overruling the Defendant’s Motion for a directed verdict at the close of the State’s case, as the Defendant argued that the State had failed to prove a prima facie case of murder.
II. That the verdict is against the weight of the evidence.
The killing of Teresa Colvin, no relation to appellant, on Monday morning, November 30, 1981, at Caldwell High School was precipitated by the following events.
The preceding Tuesday, Appellant, a 17-year-old student at Caldwell High School, attended a gathering at the Pioneer Lounge. Teresa Colvin, a 16-year-old student at Caldwell, was also present at this affair. Appellant, while at the lounge, attempted to intervene in a fight which had erupted between two girls and while so doing she spilled some wine on Teresa. Later in the evening Teresa asked appellant about spilling wine on her and appellant replied she was sorry if she had. Teresa merely responded that it was okay. Appellant next saw Teresa at the Patio Lounge the following Friday. There was no mention of the wine incident made at this time by either Teresa or appellant.
On Sunday evening, November 29, 1981, appellant first learned from her brother and friends that Teresa planned to jump her Monday because of the wine incident. Teresa had also indicated that she would be armed with a knife. Appellant told her grandmother about these threats and she advised appellant to report the same to the principal upon her arrival at school the following day. Upon leaving for school on Monday morning, November 30, 1981, appellant carried a knife because she was afraid of Teresa and also because she had known Teresa to carry a knife and cut people.[1]
Upon arriving at school, the students gathered in the cafeteria to await the start of classes. Teresa arrived at school with Jewelean Thompson, Mildred Moore and Jackie Scott who all sat together at a table behind appellant, Elaine Lee, Carrie Walker, Glenda Walker, Brenda Payne and Angela Thompson. According to the witnesses for the state, Teresa left the table at which she was sitting, got a cup of water and then proceeded to the table where appellant was seated, whereupon Teresa asked appellant “why she had poured wine on her at the Pioneer Club and was she (appellant) supposed to be cutting her.” One witness asserted that Teresa began calling appellant names. Appellant responded by telling Teresa to get out of her face and leave her alone. Appellant then jumped up and stabbed Teresa once in the chest and the two began fighting. The water Teresa was holding apparently spilled when the fight erupted although one witness asserted Teresa threw the water in appellant’s face. No one saw Teresa with a weapon. Teresa subsequently ran out of the cafeteria and died in the hallway.
Two knives were recovered by the police from the cafeteria. Aside from the knife admittedly used to stab Teresa, a second knife was found and identified by a witness as having been dropped by Rodney Colvin, appellant’s brother, after the fight erupted. The witness who saw Colvin drop the knife on the cafeteria floor could not, however, identify the knife produced at trial as being one and the same.
Appellant, aside from testifying as to the threats she had received prior to the killing, *1136 asserted that when Teresa started over to her table, Jewelean Thompson called her back and told her if she did not do something she would not get a knife that Jewe-lean had. Appellant thereafter believed that Teresa was armed. Jewelean denied making any such statement to this effect.
The jury was instructed on the theories of murder, manslaughter and justifiable homicide. A verdict of guilty as charged was returned, whereupon appellant was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections.
I. Did the trial court err in overruling appellant’s motion for directed verdict at the close of the state’s case and was the verdict of the jury against the overwhelming weight of the evidence?
Appellant contends basically that she was entitled to a directed verdict because the state’s evidence failed to show malice on behalf of appellant and also that the verdict of the jury was against the overwhelming weight of the evidence.
Appellant relies on Bangren v. State, 196 Miss. 887, 17 So.2d 599 (1944), wherein this Court held that the jury’s determination should have been limited to the offense of manslaughter. The facts there showed that decedent and Bangren argued in Bangren’s home after decedent forcibly took $3 from Marlene McKee immediately after having paid the same to her. Bangren asked the decedent to leave, whereupon appellant stated he would kill him if he returned. Decedent returned to retrieve some whiskey he had left at the house which was returned to him. Decedent and Bangren again argued. When decedent drew back to strike Bangren, appellant struck decedent and then retrieved a pistol and told him to leave. When decedent jerked Bangren onto the front porch, Bangren shot him. This Court stated:
However, we think that the trial court was in error in not limiting the issue for the jury to the question of manslaughter or justifiable homicide. While malice aforethought is a necessary element in the crime of murder, it does not always follow therefrom that the existence of actual malice at the time of the slaying would necessarily have the effect of rendering a particular homicide a case of murder. A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is mad and is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter “to do any unlawful act, or after such attempt shall have failed,” if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is then thwarted, and is nonexistent prior thereto. Each case must depend upon its own facts and circumstances. To constitute murder, the malice must precede the unlawful act which is being attempted or committed by the person killed, where the killing is done in resisting his attempt to do an unlawful act. Williams v. State, 122 Miss. 151, 84 So. 8. (196 Miss, at 897, 17 So.2d at 600)
Bangren, supra, however is readily distinguishable from the case at bar. There the Court reasoned that to permit the jury to convict Bangren of murder under the facts presented was the equivalent of ignoring her right to eject decedent from her home with such force as was reasonably necessary. The distinguishing factor is that the decedent was killed committing an unlawful act — a willful and forbidden trespass.
In passing on the denial of a motion for directed verdict, this Court in Bayse v. State, 420 So.2d 1050 (Miss.1982), stated:
The appellant also contended that he should have been granted a directed verdict of not guilty. In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled. Wilks v. State, 408 So.2d 68 (Miss.1981); Taylor v. State, 398 So.2d 1341 (Miss.1981). (420 So.2d at 1054)
*1137 Considering the evidence in this regard, the state’s evidence established that appellant armed herself with a knife before leaving for school on the day of the killing. When Teresa asked appellant about the incident concerning the wine, appellant told Teresa to get out of her face and leave her alone. Appellant then jumped up and stabbed Teresa, whereupon the two girls began fighting.
The facts in this case, while close, were sufficient to withstand appellant’s motion for directed verdict.
Appellant also contends that the verdict of the jury was against the overwhelming weight of the evidence. In Sadler v. State, 407 So.2d 95 (Miss.1981), this Court held:
Among the alleged errors assigned is that the trial court should have sustained Sadler’s motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss.1973). In Spikes v. State, 302 So.2d 250 (Miss.1974), this Court said:
On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss.1969). [302 So.2d at 251].
The resolution of such conflicts as there were in the evidence in this case, was peculiarly for the jury. In Hankins v. State, 288 So.2d 866 (Miss.1974), it was said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury. (159 Miss, at 466, 132 So. at 564) We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the fact-finding office of the jury. [288 So.2d at 868].
(407 So.2d at 97)
Appellant’s failure to tell the police officers of the alleged threats she had received by Teresa Colvin which had been communicated to appellant in her statement immediately following the killing, could well have been a factor which a jury could infer that such threats had not been made. See Cooley v. State, 391 So.2d 614 (Miss.1980).
While again the state’s case was weak, we believe it was properly submitted to the jury. Aside from murder, the jury was instructed on the theories of manslaughter and justifiable homicide. It was the prerogative of the jury as to which version of the facts it deemed more credible.
Finding no reversible error, this case should be, and the same is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.

. Appellant, in her statement to police officials, made no mention of any threats received from Teresa prior to the stabbing.